IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| KALEB ALEXANDER HOOSIER,<br><br>Plaintiff,<br><br>vs.<br><br>EXECUTIVE CENTRE ASSOCIATION, *et al.*,<br><br>Defendants. | Civil No. 25-00459 MWJS-WRP<br><br>ORDER GRANTING PLAINTIFF'S APPLICATION TO PROCEED IN FORMA PAUPERIS AND DISMISSING COMPLAINT WITH LEAVE TO AMEND |

### INTRODUCTION

Pro se Plaintiff Kaleb Alexander Hoosier has filed a complaint against the Executive Centre Association, Aston Hotels & Resorts, LLC, and two security officers. Hoosier has also applied to proceed in forma pauperis (IFP), that is, without prepayment of fees or security. When an IFP application is filed, the court must screen the proposed complaint to determine whether it states a claim upon which relief can be granted by the court.

Hoosier cannot afford court fees, and so the court GRANTS his IFP application. But for the reasons stated below, the complaint does not currently state a claim for which the court can provide relief. The court therefore DISMISSES the complaint with leave to amend. If Hoosier wishes to continue pursuing this case, he must file an amended complaint by December 3, 2025.

## DISCUSSION

    A.    **Application to Proceed In Forma Pauperis**

Typically, a person who wishes to bring a lawsuit in federal court is required to pay various court fees. Federal law, however, permits federal courts to allow a person to proceed without prepaying those fees (or providing security for them) if that person submits an affidavit showing that they cannot afford the fees. *See* 28 U.S.C. § 1915(a). While there is no specific formula to determine whether an IFP applicant can afford the fees, an IFP affidavit must at least allege "that the affiant cannot pay the court costs and still afford the necessities of life," and it must do so "with some particularity, definiteness and certainty." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015).

Here, Hoosier's IFP affidavit indicates that he has no income or assets, is not employed, and has not been employed for at least two years. Dkt. No. 2, at PageID.7-9. The affidavit also includes Hoosier's statement, "I am homeless," as a reason why he cannot pay for the cost of this lawsuit. *Id.* at PageID.11. Based on these representations, the court finds that Hoosier has demonstrated an inability to afford court fees pursuant to 28 U.S.C. § 1915. *See, e.g., Bahrampour v. United States*, No. 16-cv-00985, 2016 WL 11185590 (D. Nev. May 9, 2016). The court therefore GRANTS his IFP application.

    B.    **Screening of Hoosier's Complaint**

When a plaintiff proceeds in forma pauperis, the court must screen the complaint to ensure that it is not frivolous, malicious, and does not fail to state a claim on which

relief may be granted. 28 U.S.C. 1915(e)(2). Because Hoosier is a pro se plaintiff, the court construes his complaint liberally. *See, e.g., Henderson v. Alexander & Baldwin, Inc.*, CV No. 07-00101, 2007 WL 3332067, at *4 (D. Haw. Nov. 7, 2007). But even when construed liberally, the complaint of a pro se plaintiff must offer enough facts to state a claim for relief that is plausible on its face. *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). And those facts must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The court first describes the allegations in Hoosier's complaint and then considers whether they sufficiently state a claim for relief in their current form.

### 1. The Allegations in Hoosier's Complaint

Hoosier alleges that on October 14, 2025, he was engaged in "peaceful panhandling" on a "public easement sidewalk" at or near 1088 Bishop Street in downtown Honolulu. Dkt. No. 1, at PageID.1, 3. While panhandling, Hoosier was approached by a security officer, Defendant Derek Delos Reyes, and an unnamed "management representative." Dkt. No. 1, at PageID.3. Delos Reyes and the representative accused Hoosier of "loitering, refusing to leave, and sitting on a wall," and informed Hoosier that he was being trespassed from the area for one year. *Id.* At some point, three Honolulu Police Department ("HPD") officers, whom Hoosier

identifies by their badge numbers in the complaint, enforced the trespass order against Hoosier.  *Id.*

Twelve days later, on October 26, 2025, Hoosier was standing on the public sidewalk or in the street near 1088 Bishop Street.  *Id.* at PageID.1, 3.  An unnamed security officer (listed as John Doe in the complaint) saw Hoosier and allegedly called out to passersby, "don't give him money, he is a pedophile."  *Id.*  Hoosier states that this statement was false and that he has no criminal record.  Furthermore, Hoosier claims that the statement "deterred donations, inflicted public humiliation, and caused severe distress, exacerbated by the prior trespass [order]."  *Id.* at PageID.4.

Hoosier filed this lawsuit the following day, Dkt. No. 1, and simultaneously filed an application to proceed in forma pauperis, Dkt. No. 2.  His complaint includes four total counts; Counts I, II, and IV are asserted against all defendants, while Count III is asserted against all defendants except for Delos Reyes.  Dkt. No. 1, at PageID.4-5.  Counts I and II both stem from the October 14 trespass incident.  *Id.* at PageID.4.  In Count I, Hoosier claims that Defendants are liable to Hoosier under 42 U.S.C. § 1983, because by preventing him from panhandling on a public sidewalk, they violated his First Amendment rights.  *Id.*  In Count II, Hoosier contends that the "baseless trespass" constituted false arrest or false imprisonment under Hawaiʻi state law and a Honolulu city ordinance.  *Id.*  Hoosier also asserts a third claim stemming from the October 26 incident.  In Count III, he alleges that the Doe security officer's statements about him

4

were false and defamatory, and constitute slander per se under Hawaiʻi law. *Id.* at PageID.4-5. Finally, in Count IV, Hoosier brings a state law claim for intentional infliction of emotional distress based on both incidents. *Id.* at PageID.5. He seeks compensatory and punitive damages as well as injunctive relief for his claims. *Id.*

**2.   The Complaint Does Not Survive Screening in its Current Form**

As the foregoing summary makes clear, Hoosier's complaint provides a number of factual allegations in support of his claims, some of them quite detailed. But the question is whether these factual allegations state a claim on which this court could legally grant relief. And, at least in its current form, they do not. The court addresses the problems with each count in turn.

a. Count I alleges that Defendants violated Hoosier's First Amendment right to peacefully panhandle on a public sidewalk, thereby violating 42 U.S.C. § 1983.[1] Dkt. No. 1, at PageID.4. "To state a claim under [Section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). As a result, Section 1983 "generally applies to government officials and employees, [but] a private actor may act under 'color of law' in certain circumstances." *Minichino v. Wells Fargo Bank, N.A.*, Civil No.

---

[1] At this early point in the litigation, the court does not address whether Hoosier has a valid First Amendment claim. This order only addresses whether the alleged First Amendment violation states a claim for Section 1983 purposes.

11-00370, 2012 WL 3234425, at *4 (D. Haw. Aug. 3, 2012).  These circumstances include when the private actor "conspir[es] with state officials, . . . engag[es] in joint activity with state officials, and/or . . . becom[es] so closely related to the state that the person's actions can be said to be those of the state itself."  *Id.* (citing *Price v. Hawaii*, 939 F.2d 702, 708 (9th Cir. 1991)).

      Here, all of the named Defendants are private parties.  And the facts alleged in the complaint do not provide any obvious reason to treat any defendant as a state actor.  The complaint does not allege that any defendant conspired with the HPD officers who enforced the trespass order or any other state official.  And although the defendants may have sought out the help of HPD to enforce the trespass order, that fact standing alone does not convert their action into state action.  *See Collins v. Womancare*, 878 F.2d 1145, 1155 (9th Cir. 1989) ("merely complaining to the police does not convert a private party into a state actor").  Nor does the mere fact that the defendants may have relied on a state or local law to trespass Hoosier from the premises.  *See Ballinger v. City of Oakland*, 24 F.4th 1287, 1300 (9th Cir. 2022) ("an action by a private party pursuant to a statute, without something more, is not sufficient to justify a characterization of that party as a state actor." (cleaned up)).  As a result, the complaint in its current form does not state a Section 1983 claim against any of the named Defendants.

      But the complaint makes a number of factual allegations about the conduct of HPD officers, none of whom is currently named as a defendant.  These factual

allegations suggest that Hoosier may be attempting to allege that HPD officers were involved in the activities of which he complains.  And Hoosier may be able to state a claim under Section 1983 by more explicitly alleging that the HPD officers who enforced the trespass order against him violated his First Amendment rights by preventing him from panhandling on a public sidewalk.  To properly state a Section 1983 claim in this manner, Hoosier would need to amend his complaint to name the specific HPD officers as defendants, and would also need to include factual allegations clearly indicating how those defendants violated his constitutional rights.  *See, e.g., Wells v. Santa Clara Cnty. Med. Ctr.*, No. 08-174, 2008 WL 4369783, at *1 (N.D. Cal. Sept. 23, 2008) (Section 1983 plaintiff must "name[] as defendants the individual state actors who allegedly wronged him . . . and link each of them to his claim by explaining what each defendant did or failed to do that caused a violation of his constitutional rights.").

  b.  Count II, which asserts false arrest and false imprisonment state law claims based on the October 14 incident, also suffers from factual defects.  Under Hawaiʻi law, "[f]or both false arrest and false imprisonment, the essential elements are (1) the detention or restraint of one against his or her will, and (2) the unlawfulness of such detention or restraint."  *Reed v. City & Cnty. of Honolulu*, 76 Hawaiʻi 219, 230, 873 P.2d 98, 109 (1994) (cleaned up).  Here, the complaint does not allege that Hoosier was ever detained or restrained at all.  It asserts that "Defendants intentionally confined Plaintiff via baseless trespass," Dkt. No. 1, at PageID.4, but the facts alleged in the complaint do

7

not otherwise support that statement.  And if the only basis for Hoosier's claim is the existence or enforcement of a trespass order, the complaint does not plausibly allege how Hoosier could possibly be considered to have been detained, restrained, or otherwise confined merely as a result of that order.  By its nature, a trespass order does not confine a person to an area—rather, it excludes a person from an area.  *See Puente v. City of Phoenix*, 123 F.4th 1035 (9th Cir. 2024) (explaining that "exclusion from a place, even if wrongful, does not ordinarily constitute confinement" for purposes of false imprisonment).

    The complaint in its current form does not, therefore, plausibly state a claim for false arrest or imprisonment.  If Hoosier can allege additional facts that would satisfy the two elements of the claim as described in *Reed*, he must do so in an amended complaint.  Otherwise, he should withdraw his claims for false arrest or imprisonment in any future amended complaint.

    c.  Count III asserts a state law defamation claim based on the October 26 incident in which he alleges the Doe security officer shouted falsehoods about him to passersby.  The complaint, its in current form, does not show that this court has subject matter jurisdiction over Count III.  Federal courts are courts of limited jurisdiction.  *See Conner v. Off. of Hawaiian Affs.*, Civil No. 14-00350, 2014 WL 7422344, at *1 (D. Haw. Dec. 31, 2014).  Generally, a federal court may only hear a case when the plaintiffs and defendants are citizens of different states and the amount in controversy is over $75,000,

or when the case presents a federal question. *Id.* Hoosier's complaint alleges that this is a federal question case, based on the asserted violation of Section 1983 in Count I. Dkt. No. 1, at PageID.2. It also asserts that the court has supplemental jurisdiction over the remaining state law claims based on 28 U.S.C. § 1367. *Id.*

The court agrees that the alleged violation of Section 1983, if amended to properly state a claim, presents a federal question. But federal courts may only exercise supplemental jurisdiction over state law claims when "[t]he state and federal claims . . . derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). And "when the basis of jurisdiction is a federal question, a party may not join a separate and distinct nonfederal claim . . . [unless] it arises out of the same transaction or occurrence" as the federal claim. 6A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1588 (3d ed.).

Here, Count III—as currently alleged—appears to be based on a different transaction or occurrence from the one giving rise to Hoosier's federal claim under Section 1983. Whereas the alleged violation of Hoosier's First Amendment rights took place on October 14, the alleged defamatory statements were made almost two weeks later, on October 26, by a different defendant, and under circumstances that, on these facts, appear different from the prior trespass incident. The only claim in the complaint linking the two events is Hoosier's assertion that the statements caused him distress that was "exacerbated by the prior trespass." Dkt. No. 1, at PageID.4. That is not

9

enough to show that the defamation incident "arises out of the same transaction, occurrence, or series of transactions or occurrences" as the earlier trespass incident. *See Banks v. McHugh*, Civil No. 11-00798, 2012 WL 4715162, at *4 (D. Haw. Sept. 28, 2012). As a result, the court cannot exercise supplemental jurisdiction over the defamation claim as alleged.

If Hoosier wishes to maintain his defamation claim, he must include additional factual allegations in an amended complaint to show that the claim arises from the same common nucleus of operative fact as the Section 1983 claim. If he cannot do so, he must remove his defamation claim from his amended complaint. He of course remains entitled to pursue the defamation claim in Hawai'i state court.

d. The court also appears to lack subject matter jurisdiction over Count IV, alleging intentional infliction of emotional distress, to the extent that claim is based on the October 26 incident. *See* Dkt. No. 1, at Page ID.5 (Count IV "for both incidents"). If Hoosier amends his complaint to reallege Count III as described above, he may maintain Count IV's current structure. If instead, he decides to drop his defamation claim or proceed with it in state court, he should revise Count IV to seek relief only for the emotional distress that resulted from the October 14 incident.

e. Two considerations apply to Hoosier's complaint generally. First, the complaint asserts all causes of action "against all defendants" (except for Count III, which is asserted against all defendants except for Delos Reyes). Dkt. No. 1, at

10

PageID.4-5 (capitalization omitted).  That generalized allegation is not sufficient, however, because "a complaint must allege in specific terms how each named defendant is involved and set forth an affirmative link between each defendant's actions" and the claimed violation or harm.  *Williams v. U.S. Dep't of Justice*, Civil No. 19-00081, 2019 WL 1768610, at *3 (D. Haw. Apr. 22, 2019).  If Hoosier chooses to amend his complaint, he must explain how each named defendant caused him harm.  In other words, he should explain, in a clear and concise manner, what each defendant did and how those specific facts create a plausible claim for relief.[2]  Hoosier should not include any defendant as to whom he cannot make these specific allegations.

        Second, the court observes that several of Hoosier's citations to legal cases and Honolulu city ordinances either do not appear to exist or do not support the proposition for which the complaint cites them.  *See* Dkt. No. 1, at PageID.2, 3 (citing "*Blair v. City of Honolulu*," which does not appear to exist); *compare id.* at PageID.3 (citing "ROH § 14-1"

---

[2]    This is particularly important for the corporate defendants, Executive Centre Association and Aston Hotels & Resorts, LLC.  Because these defendants are not human beings and can only commit the alleged torts through human beings acting on their behalf, the complaint must allege why and how the defendants are liable for the actions of the human beings who personally harmed Hoosier.  Although the complaint states, for example, that Aston Hotels & Resorts, LLC, "is liable under respondeat superior" as the property manager of 1088 Bishop Street, Dkt. No. 1, at PageID.3, it does not offer facts from which the court could conclude that the doctrine of respondeat superior applies—for example, that either security officer was an employee or agent of Aston Hotels & Resorts, LLC, or the Executive Centre Association.  If Hoosier chooses to amend his complaint, he must allege facts explaining the relationship between the corporate defendants and the human beings alleged to have harmed him.

11

in relation to a "public easement sidewalk") *with* HONOLULU, HAW., REV. ORDINANCES ("ROH") § 14-1 (2025) (relating to the "Use of Indigenous and Introduced Polynesian Plants in Public Landscaping"); *compare id.* at PageID.4 (citing "ROH § 29-7.2," which does not appear to exist, for proposition that intentional confinement "via baseless trespass" is unlawful) *with* ROH ch. 29 (relating to "General Affordable Housing Requirements").

      These may be honest mistakes, but the court is mindful that citations to nonexistent cases or laws are increasingly the result of artificial intelligence ("AI") "hallucinations."  As a result, the District of Hawaiʻi has adopted a General Order requiring any counsel or pro se party who submits a filing generated by AI to also submit a declaration along with that filing entitled "Reliance on Unverified Source" that:  "(1) advises the court that counsel or the pro se party has relied on one or more unverified sources, and (2) verifies that the counsel or pro se party has confirmed that any material is not fictitious."  D. Haw. General Order 23-1 (Nov. 14, 2023).  If Hoosier is using AI to draft his complaints, he must submit the required declaration alongside any amended complaint he files.

      Whether or not Hoosier is using AI to assist with his research or drafting, he is reminded that all parties, including pro se plaintiffs, are required to comply with all local and federal rules.  *See* Local Rule 81.1 ("Pro se litigants shall abide by all local, federal, and other applicable rules and/or statutes.").  Before filing an amended

complaint, Hoosier should take care to ensure that his sources are accurately cited and support the propositions for which they are cited. Doing so will ensure that the court and opposing parties can fairly evaluate his claims.

### C. Leave to Amend

Although the court dismisses the complaint, it recognizes that Hoosier is proceeding pro se and could fix the problems with his current complaint through amendment. The court therefore GRANTS leave to amend. See FED. R. CIV. P. 15(a)(2); *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Any amended complaint must be filed by December 3, 2025, and it must fix the problems identified in this order. It must comply with the Federal Rules of Civil Procedure and this court's Local Rules, including Local Rule 10.4, which requires Hoosier to "reproduce the entire pleading as amended"; he "may not incorporate any part of a prior pleading by reference." Hoosier is cautioned that failure to timely file an amended complaint that fixes the problems identified in this order will result in the automatic dismissal of this case.

## **CONCLUSION**

For the foregoing reasons, the court GRANTS Hoosier's in forma pauperis application, but DISMISSES his complaint with leave to amend. If Hoosier wishes to file an amended complaint, he must do so by December 3, 2025.

IT IS SO ORDERED.

DATED: October 31, 2025, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

Civil No. 25-00459 MWJS-WRP, *Kaleb Alexander Hoosier v. Executive Centre Association, et al.*; ORDER GRANTING PLAINTIFF'S APPLICATION TO PROCEED IN FORMA PAUPERIS AND DISMISSING COMPLAINT WITH LEAVE TO AMEND

14